**Clifford ROWLING, Appellant,**

v.

**STATE of Missouri, Respondent.**

No. 52782.

Missouri Court of Appeals,
Eastern District,
Division One.

Jan. 19, 1988.

Rehearing Denied March 2, 1988.

Henry B. Robertson, Mary C. McWilliams, Asst. Public Defender, St. Louis, for appellant.

William L. Webster, Atty. Gen., Deborah L. Ground, Asst. Atty. Gen., Jefferson City, for respondent.

CRIST, Judge.

Movant appeals the denial of his Rule 27.26 motion after an evidentiary hearing. Movant sought to vacate his convictions of rape, sodomy, kidnapping and attempted first degree robbery. He was sentenced to concurrent terms of thirty years each on the rape and sodomy counts and consecutive terms of fifteen and five years on the kidnapping and attempted robbery counts. We affirm.

Movant complains of fundamental unfairness in the failure of his lawyer to seek disclosure of, and the prosecutor's failure to disclose, a letter written by victim's school principal which revealed the victim's stepmother had characterized victim as a chronic liar, and further revealed the names of two witnesses who saw victim come to school, four days before the crimes in question were committed, in a white van,

although victim said she came to school in a school bus on such earlier date. Movant presented an alibi defense at his original trial.

For the reason movant's lawyer failed to file a written request for discovery of the contents of the letter, there was no duty on the part of the prosecutor to disclose. Rule 25.03(A)(9).

While movant has shown his lawyer's performance was deficient, he has not shown there was a reasonable probability his trial proceedings would have been different if his lawyer had filed a written discovery request. *Sanders v. State,* 738 S.W.2d 856, 857 (Mo. banc 1987); *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

### ORIGINAL TRIAL TESTIMONY

The fourteen-year-old victim in this case testified that on November 12, 1982 at 6:25 a.m., she went to a service station at 7640 North Broadway in St. Louis where she caught the school bus each day. Judy Burgstrom, the manager of the service station, drove past the station at approximately 6:25 a.m. and saw victim walking toward the station. Victim testified while she waited for her schoolmates to join her, a white van, driven by a black man, pulled up in front of the station. She told him the station was closed, and he drove the van a few feet away from her, got out of the van, took something from underneath the driver's seat, then got back into the van and drove over to her. Victim saw the man had a gun, and he told her to "come here." She said no and started to run, but the man said "don't run" and told her to give her purse to him. As victim attempted to hand him her purse, he pulled her into the van, and she dropped her purse on the ground.

Victim then testified the man drove approximately five or ten minutes before he stopped the van and told her to go to the back. There the man sodomized her and had sexual intercourse with her. He then drove her to school.

In the meantime, the manager of the service station had returned at 6:35 or 6:40 a.m., discovered victim was gone, and found her purse on the ground. She called the police.

Victim went into the school building at approximately 7 a.m., where other students noticed she was upset and took her to the principal's office. The police were called and victim described the van in which she was raped as a white van. She described in some detail the interior of the van. Above the sun visor in the front of the van she described photographs of a black woman. She saw large cushion-like pillows and a pair of crutches in the back of the van. She described pictures on the windows of the van which prevented anyone from seeing inside.

Victim testified the gun the man pointed at her had flat sides. She described her assailant as a black man in his late twenties or early thirties, 5' 10" to 6' 2" tall, 200–220 pounds, wearing a dark blue jacket, a red shirt and blue pants.

Victim was taken to the hospital where medical examination revealed a fresh laceration of her hymen, and semen in her vagina. She was taken to the police station where she looked through three hundred photographs without making an identification. In the late afternoon, a white Ford van belonging to movant and matching the description victim had provided was located by police officers. Victim was taken to the van and identified it as the same one in which she had been raped. She identified movant as her assailant from an eight-man lineup.

As noted earlier, movant's defense was alibi. He presented seven witnesses, including himself. According to the defense testimony, movant received a call at 5:50 a.m. that morning from his ex-wife asking him to contact the gas company and have gas service turned on in her home. Movant testified he left his home at 6:25 a.m., and was seen at work at 6:45. He told his supervisor at 7:20 a.m. he had to take care of a gas bill and left work at 8:00 a.m., but later returned. The police arrested movant at 4:00 or 4:30 p.m. He denied any involvement in the rape and denied ever having seen victim. Movant admitted to having

crutches in his van, picture screening on the windows of his van, and photographs above his sun visor. Furthermore, he kept a pellet gun under the seat in the van.

## RULE 27.26 HEARING TESTIMONY

The prosecutor testified he was aware of the letter in question. He investigated the relationship between the victim and her stepmother and found it was not good. The prosecutor further stated he spoke to one of the witnesses, and she told him she had seen victim four days before the crime and her husband saw victim exit a van on that date. The prosecutor asked her to have her husband contact him, but he never did.

Movant's trial attorney testified he had never seen the letter, but if he had known of it, he would have investigated the allegations therein.

One of the witnesses referred to in the undisclosed letter testified he saw a young girl exit a white van in front of the school four days before the crimes. He did not recognize this young girl as the victim. His wife, the other undisclosed witness, who was with him, did not see victim get out of a white van, but at the time told her husband victim was late in coming to school that morning. The wife remembered talking to a policeman about the incident, but not the prosecutor.

The motion court denied movant's claim finding there was "no reasonable probability that the result of defendant's trial would have been different had the [evidence] ... been disclosed." Our review of a 27.26 proceeding is limited to a determination of whether the findings, conclusions, and judgment of the motion court are clearly erroneous. *Maxey v. State*, 713 S.W.2d 567, 568 (Mo.App.1986). "A motion court's findings are only clearly erroneous if after reviewing the complete record, this court is left with the definite and firm impression that a mistake has been made." *Id.*

The allegations contained in the letter which suggested the victim was seen exiting a white van, similar to the description of movant's van, four days prior to the rape, was not sufficiently material to show defendant did not commit the crimes. Defendant testified he did not know victim and had no reason to believe she had been in his van.

The only real question is that of credibility. Because of the evidence corroborating victim's story, we cannot say the fact that victim may have arrived at school in a white van four days before the crimes were committed and the further fact that victim's stepmother accused her of being a chronic liar, was sufficient to change the result of movant's trial, if disclosed. The trial court did not err in finding no fundamental unfairness in the nondisclosure of the letter.

Judgment affirmed.

GARY M. GAERTNER, P.J., and REINHARD, J., concur.